*BROOK & AL.* vs. *L. S. INS. COMPANY, ante* 640.

BROOKE,
ALLEN & CO.
*vs.*
LOUISIANA
STATE
INSURANCECO.

In this case a rehearing was granted, and the importance of the case has induced us to print the argument of the counsel.

*Workman*, for the defendants. This action was brought to recover $11,000, being the amount, as valued in the policy, insured on a cargo of mules, for the plaintiffs by the defendants, from the port of St. Jago in Mexico, to the port of Havana in the island of Cuba, on board the schooner Hazard, a vessel of near 102 tons burden, Ephraim Haskins, master. The insurance was effected in these words, *written in manuscript*, and forming the conclusion of the memorandum: " This insurance is declared to be on cargo valued at eleven thousand dollars, say $11,000: mules on or under deck against stranding or a total loss." The premium was fixed at three per cent.; one per cent. more was afterwards added for liberty for the vessel to touch, if necessary, for provisions or water at the Balize, Mobile point or Pensacola. She proceeded, however, directly to her port of

East'n. District.
July, 1826.

BROOKE,
ALLEN & CO.
vs.
LOUISIANA
STATE
INSURANCE Co.

destination, with seventy-four mules, and no other cargo on board. On her voyage, the plaintiffs allege that she encountered storms and gales of wind; that she was once thrown on her beam ends, when several of the mules were killed by the bruises they received; that others of them died from diseases or suffering, the consequence of the bad weather and a long passage; that only thirty-nine of them were landed at the Havana, of which two died immediately after they were put on shore; that the rest were so deteriorated in value by their sufferings at sea, that they were sold at auction for but little more than two thousand dollars, and that the nett proceeds, after deducting all charges, amounted to something less than 100 dollars. (*Frost Thorn's deposition, Record, p.* 17, 18.) Under these circumstances, the plaintiffs claim as for a total loss.

Our Code and the elementary writers tell us, that the contract of insurance is an aleatory or gambling contract. This should be no disparagement to it: if it be gambling, it is of all sorts of gambling the most innocent and beneficial. By securing property against the hazards and dangers of maritime com-

merce, it encourages the merchant to ad-
venturous enterprise; it increases the inter-
course, it supplies the wants, it multiplies the
enjoyments and promotes the prosperity of
nations. If we cannot prevent the in-
justice of established governments, or the
rapacity of lawless pirates; if we cannot still
the storm, or remove from the seas and rivers
the numerous impediments to navigation which
they contain, concealed or manifest, we can
at least provide an indemnity for the losses
arising from shipwreck and capture. The
contract of insurance may perhaps be more
properly considered as a contract of warranty;
a contract by which one party, for a premium
or valuable consideration agreed upon, en-
gages to indemnify the other against the losses
that may result from some specified contingent
events. But, by whatever name this conven-
tion may be known, or in whatever class it
ought to be placed, there is no doubt as to
the principles by which it is to be regulated.
All the writers on commercial jurisprudence,
all the judges eminent for their knowledge of
this branch of the law, agree that this con-
tract must be entered into by the parties in
the purest good faith, and that every material

East'n. District.
July, 1826.

BROOKE,
ALLEN & CO.
vs
LOUISIANA
STATE
INSURANCECo.

BROOKE,
ALLEN & CO.
*vs.*
LOUISIANA
STATE
INSURANCECo.

circumstance of the risk must be set forth and explained with perfect candor and unreserved frankness. There must be no mendacity, no misrepresentation, no concealment, no ambiguity : honor and honesty, in short, form the foundation of this covenant. Under our system of law, all other contracts are governed by similar principles, though they are not so emphatically announced as in the contract of insurance; but our theory and our practice are sometimes sadly at variance. Instead of the clear and full and open truth required from the contracting parties, conventions are sometimes formed amongst us in the spirit of dissimulation and deceit.

The principles of the contract of insurance, are denied by none; but, are they respected, are they carried into effect by our juries? On one side they are ; and, too often, on one side only. Our juries all agree, that the insurance companies should observe towards the assured the utmost plenitude of good faith, justice and liberality; but, as to the assured, in their conduct towards the insurers, a widely different doctrine seems to prevail. The assured may, in violation of his warranty, send to sea a worthless vessel, three parts rotten,

East'n. District.
July, 1826.

BROOKE,
ALLEN & CO.
vs.
LOUISIANA
STATE
INSURANCECO.

that can but just float; or one badly rigged, ill-supplied, ill-manned, and ignorantly navigated : no matter, if she is wrecked or goes down, the insurers must pay the damage. The assured may overvalue his cargo, or overrate his expected profits to any extent: the valuation is held sacred; it must not be touched; while the only privilege allowed to the insurance company is to indemnify the assured whenever any loss occurs, and whether the risk or event from which the loss arises, has been insured against or not. *Caveat assecurator*, (insurer beware!) seems to be the maxim of our juries; and they carry it quite as far in favor of the assured, as the warmest admirers of the good old common law, could wish to carry the corresponding maxim of *caveat emptor* (buyer beware!) in favor of the sellers of property. All the rights are on one side; on the other there is nothing but duty and liability. The engagement between the parties is one of Hibernian reciprocity; like that aleatory contract in tossing up money, which most of us have heard of in our younger days: *Head, I win; tail, you lose.*

The uniform decided partiality of juries in favor of the assured, is probably the chief

East'n. District.
*July*, 1826.

BROOKE,
ALLEN, & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

cause which has led most of the insurance companies in this country to ruin, or the brink of ruin. Fortunately for the insurers in this state, its laws enable this high tribunal not only to set aside an unjust verdict, but to render a final judgment in opposition to it. We are not driven to the necessity of an endless course of new trials.

The case now before the court is one which strongly requires the exercise of this authority. The seventy-four mules, composing the whole cargo of this small vessel, were insured against no other risks than those of stranding or a total loss. The vessel was not stranded, but arrived at the port of her destination with thirty-nine of these mules, more than half of the whole number put on board; and yet the jury, in open violation of the words and spirit of the contract, and in direct opposition to the charge of the judge, have given the plaintiffs their verdict for a partial loss; a verdict for $4,500, a sum more than double the first cost of the whole cargo, which the plaintiffs have modestly valued at $11,000.

The pleadings in the case are simple. The demand is made by a petition, in our usual plain, intelligible form. The defen-

dants plead the general issue, under which they might make every defence in their power, in the same manner as under a plea of non-assumpsit to the action of assumpsit. In addition to the general issue, they allege, that the valuation in the policy is erroneous and extravagant. It was not necessary for them to have pleaded this matter specially. It was set forth in the abundance of their good faith and liberality, to give notice to the adverse party of a means of defence which they intended to use on the trial, so that he might come prepared to resist it.

A policy of insurance, in which the value of the subject is agreed upon by the parties, is called a valued policy: if that value be not so fixed and specified, it is an open policy. The valuation, if not fraudulent or extravagant, will be binding upon the parties. The value should be fixed, so as that the assured may have an indemnity and no more. If the property be much overvalued it must be with a bad view: the value in the policy is considered as the fair amount of the prime cost. *Marshall*, *b.* 1, *c.* 7, §1, 2; *Burr.* 1171; *Park*, 102; *Phillips*, 305. This value ought only to be considered as *primâ facie* evidence of the

East'n. District.
*July*, 1826.

BROOKE, ALLEN & CO.
*vs.*
LOUISIANA STATE INSURANCE CO.

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

amount of the interest of the insured. The insurer admits it on the mere representation of the insured, and if he find that it was ficticious or falacious, he is at liberty to dispute it. In England, where a valued policy is *bona fide* meant as an indemnity, the courts will not inquire minutely whether the valuation be very near the true interest of the insurer. A small excess ought not to be regarded. *Marshall, same section.* In France, all insurance on the expected profits of merchandise, or any thing beyond the actual cost or value of the property insured, is void. *Code de Com. art.* 158; *Rapport par Mr. Challan Maugerot, Législation Com.* 40; *Emerigon, ch.* 7, §2 ; *Pothier, Contract d'Assurance, p.* 242—244.

In the United States we have adopted the English doctrine on this subject, with little variation. It is held, that if the parties, without intending to wager, fairly agree to estimate the property at a high rate, their agreement will be valid. *Phillips,* 306; 3 *Binny,* 205.

In the present case, I contend that no fair agreement whatever has been made between the parties to estimate the property insured. From the representation made by the insurers, it was reasonably to be inferred, that

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

there was to be some other cargo on board this schooner besides the mules.

"Cargo valued at $11,000: mules on and under deck against stranding or a total loss." If it was the intention of the plaintiffs to value their mules at that extravagant rate, they should have stated the valuation to be on the mules only, in words to this effect: "The cargo to consist of mules, valued at so much per head, or the whole cargo of mules valued at $11,000." The gross excess of such an estimation would then have been at once manifest, and no doubt it would have been at once rejected. By this simulation or dissimulation, the defendants were led into an error; and whether that error was occasioned by the fraud or mistake of the other party, it is equally destructive to the validity of the insurance. When a cargo consists of only one kind of articles, the fair way of estimating them, is to value them by number, weight, or measure; then the parties will understand each other. But in this case, the insurers were induced to believe that mules were to form only part of the cargo; whereas, if the truth had been clearly and explicitly stated, it is not to be supposed that they would have

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

ever agreed to value as many mules as could be safely stowed on board a small schooner, of near 102 tons burthen, (as her captain swears) at the enormous rate of $11,000. This suppression or concealment of the truth, as to the nature of the cargo, renders the valuation in the policy utterly void. No valuation of *that cargo* was, in fact, ever agreed to by the insurers. They could not have agreed to put or admit a value upon that, the true nature of which was misrepresented, or at least never fairly made known to them. This circumstance would annul the valuation, even if it were not extravagant or excessive. The valuation is binding on the parties only when it has been fairly agreed upon between them.

The extravagance of the valuation, in this case, sufficiently appears from the evidence of the plaintiffs' own witness, Mr. Frost Thorn, the agent who was employed by them to purchase, and did purchase the mules in question at St. Jago : he swears, p. 17, B., "That the average price of the mules on board of the Hazard was *about* fifty-five dollars a pair ; that *about* five pairs of the mules were bought for eighteen dollars a head." Let us give

implicit credit to this testimony, though its want of precision, where it was easy to be precise, might render it exceptionable. At fifty-five dollars the pair, each mule cost twenty-seven dollars and a half; and the whole cargo of seventy-four mules amounted to $2,035; a sum less than one-fifth of that at which they were valued in the policy. Add one, add two, or even three thousand dollars for costs and charges, and the valuation will still be excessive and enormous, according to the obvious meaning and every just definition of these words, and to every reason drawn from general policy and morality; according to the opinions of every writer on commercial law without exception, and to the decisions of every tribunal whose judgments on the subject are entitled to our respect.

In another view, the misstatement or simulation we complain of is fatal to the plaintiffs' claim. The nature of the risk, as well as the value of the cargo, was misrepresented by them. Now it is universally admitted, that in these cases fair dealing is strictly required by law. The contract is generally entered into by the insurer, in consequence of the representations of the insured; and if these

East'n. District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

East'n. District. representations do not enable the insurer to
*July*, 1826. make a just estimate of the risk, he ought not

BROOKE, to be bound by the contract.   If either party,
ALLEN & Co. whether by design or through negligence,
*vs.*
LOUISIANA mistake, or oversight, conceals or misrepre-
STATE
INSURANCE Co. sents a fact material to the risk, the contract
will be void with respect to the other party.
A representation is construed according to
the fair and obvious import of the words, and
considered equivalent to an express statement
of all the inferences naturally arising from it.
"Good faith," says Lord Mansfield, " forbids
either party, by concealing what he knows, to
draw the other into a bargain, from his igno-
rance of that fact, and his believing the con-
trary.   The facts lie most commonly in the
knowledge of the assured *only ;* the under-
writer trusts to his representation, and pro-
ceeds upon confidence that he does not keep
back any circumstance to mislead the under-
writer, and induce him to estimate the risk as
if it did not exist.   The keeping back such
circumstance is a fraud; and although the
suppression should happen through mistake,
the policy is void, because the risk is different
from that understood and intended to be run."
3 *Burrows*, 1905; *Phillips*, 80.   The fact that

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

the cargo of this schooner was to consist entirely of mules, was well known to the plaintiffs, as appears from the evidence of Frost Thorn. He was employed, as he states, (p. 13) by Brooke, Allen & Co., to go to St. Jago, for the purpose of buying mules for the Havana, to be shipped on board the Hazard. She was fitted up for the sole purpose of transporting mules; no other merchandise was intended to form any part of her lading. This fact, this intention, ought to have been fairly communicated to the insurers. They were misled by its suppression. But there is worse than suppression here; there is positive misrepresentation. The insured first declares, that his cargo, which is to be insured against *all* the usual risks, without any exception, shall be valued at $11,000; and then it is stipulated, that mules, whether on or under deck, are insured only against stranding or a total loss. Here are two distinct insurances : the one general, and the other limited to two specified hazards. What could such a distinction mean, if there were no distinct subjects to which it could be applicable? The insured gave the defendants to understand, not ambiguously but explicitly,

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

according to the obvious meaning of his words, and the natural inference to be drawn from them, that his cargo was not to consist wholly of mules. The suppression or misrepresentation, which ever it may be, affects the risk materially. There is a much greater hazard of the loss of animals of this kind, particularly on board of a small vessel, when she is loaded with nothing else, than when they form only a part of her cargo. The greater their number, the more liable are they to be killed or maimed by the rolling of the vessel, or by falling on one another; and it may be reasonably apprehended they will be thrown overboard without much scruple or reluctance, especially if insured at five times more than their original cost. The evidence in this very case shows that all the mules in the hold of the vessel perished in consequence of one gale of wind.

The schooner having arrived at the Havana, there was no other risk provided for but that of a total loss. Part of the cargo, upwards of one half the mules of which it originally consisted, remained; and, as the loss was not total, the plaintiffs can recover nothing.

The term *total loss*, is understood in two different senses: natural and legal. In its natural sense, it signifies the absolute destruction of the thing insured: in its legal sense, it means not only the total destruction, but likewise such damage to the thing insured, though it may specifically remain, as renders it of little or no value to the owner. Losses of this last description are also called technical or constructive total losses. In these cases an abandonment must be made by the assured of what remains of the thing insured, in order to give him the right of recovering the entire value. *Marshall, chap.* 13; *Phillips*, 383. It was doubted for some time in England, whether abandonment should have been permitted at all; but about the year 1745, that question was determined in the affirmative. It was considered that in cases of capture and detention, insurance would afford an inadequate remedy to the assured, without the right to abandon, and in many cases of sea damage the indemnity would otherwise be long delayed and difficult to adjust. 1 *Term Rep.* 608. The object of abandonment is to turn that into a total loss, which would otherwise not be so.

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

East'n. District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

Different regulations prevail respecting the extent of the loss which will entitle the assured to abandon.   In France the loss must amount to at least three quarters of the value of the thing insured.   *Code de Commerce, liv.* 2, *art.* 180.   In England and the United States, it has been settled, that a loss of upwards of one half will be sufficient for that purpose.   But it soon appeared that this privilege often subjected the insurers to total losses on perishable and other articles, when none of the principal risks, intended to be insured against, had occurred.   On this account, about the year 1749, the general words and provisions of the policy were altered or qualified, and some of the risks wholly or in part excluded, by stipulations inserted in what is called the memorandum, at the bottom of the policy.   It is now stipulated in most policies, that upon certain enumerated articles, the insurer shall not be answerable for any partial loss whatever; and that upon certain other articles, he shall only be liable for partial loss, amounting to a specified rate per centum.   See *Marshall, b.* 1, *ch.* 6, §3; *Phillips,* 483; *Park,* 112, and the cases there referred to.   The words by which the stipulation against all partial losses are made,

are various : such as, free from average, free
from particular average; insured against a
total loss, or a total loss only : (by the word BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.
*average*, and the phrase *particular average*, a
partial loss is always meant.) An exception
to the exception is generally provided for the
case of a general average, or if the vessel be
stranded. A general average, or contribution
to a general loss, takes place when goods are
thrown overboard for the purpose of lightening
and saving the ship; the owners of the ship
and of the goods thereby saved, contributing
proportionally for the relief of those whose
goods were sacrificed for the common safety.

The exception of particular average, or of
any other than a total loss, excludes the con-
structive total loss on account of damage to
the article. Accordingly, the right of aban-
donment, on account of damage exceeding
half the value, does not apply to those articles:
as long as they continue to be of any value, or
that any portion of them remains, the insurers
are not liable for a total loss. This doctrine
is now established beyond all doubt, by a long
series of decisions of the tribunals of Great
Britain, of the United States, and of several
of the great commercial states of the union.

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCECo.

Notes of these cases are given by Phillips, from page 487, to p. 492. They will be found more fully reported, in 7 *Cranch*, 415 *to* 418 ; 8 *Cranch*, 39 *to* 46 ; 3 *Caine's Rep.* 108 ; 3 *Bos. &* *Pull.* 474 ; 1 *Caine's Rep.* 196 ; 2 *Maule & Sel-wyn*, 371 *to* 375 ; 1 *Wheat.* 219, 224 ; 6 *Mass. Rep.* 465, 471 ; 7 *Johnson*, 527. The result of all these uniform adjudications, after solemn argument, has been declared by the supreme court of the United States, in the cases of *Biays* vs. *the Chesapeake Insurance Company; Mercardier*, vs. *ditto ; and Moreau* vs. *the United States Insurance Company ;* in these words: " It is well understood at the present day, with respect to such articles (memorandum arti-cles) that underwriters are free from all par-tial losses of every kind, which do not arise from a contribution towards a general ave-rage." 7 *Cranch*, 418. " The underwriter is, in all cases of deterioration entitled to an ex-emption from partial losses on the memoran-dum articles." 8 *Cranch*, 48. " As to memo-randum articles, the insurer agrees to pay for a total loss only, the insured taking upon him-self all partial losses without exception. If the property arrive at the port of discharge, reduced in quantity or value to any amount,

the loss can not be said to be total in reality." 1 *Wheat* 224.

In the case cited from 6 *Massachusetts Reports,* (*Murray* vs. *Hatch*) the insurance was effected in the memorandum in these words, "this risk is against a total loss only." In our case the mules are insured against stranding or a total loss. Leave out the risk of stranding, which must in fact be left out of consideration, as it did not happen, and our insurance would then be exactly as in the Massachusetts case against a total loss only. The supreme court of that commonwealth, decided that those words were equivalent to an insurance with an exception of partial or average losses, or with a warranty against them on the part of the insured. *Judge Sewal's opinion in that case, p.* 471, 472. This decision, with the unanswerable reasons on which it is founded, furnishes a conclusive reply to the argument urged by one of the plaintiffs' learned counsel, in the court below, that an insurance against a total loss, must mean an insurance against a total loss of every kind or description; against the technical or constructive, as well as the actual total loss. The insertion of the words total loss in the

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCECo.

memorandum, serves unequivocally to explain their meaning. The memorandum is a restriction of the risks insured against. The memorandum respecting corn and various articles perishable in their own nature, or liable to particular injuries at sea, renders the policy, as to the excepted articles, an insurance against that sort of misfortune, which is considered as amounting to an actual total loss; and in the cases thus provided for, the insurance is against a total loss only. It seems therefore to be but a change of terms, a self-evident proposition, to say that an insurance against a total loss only, is equivalent to an insurance with an exception of partial or average loss. See the last cited opinion.

We find however, one case in the books, *Davy* vs. *Millford*, 15 *East*, 559, in which the extraordinary doctrine was held, that a destruction of a part of the subject insured with the exception of a partial loss, was a total loss of that part, within the policy. This case was not noticed by either party in the district court. We did not deem it necessary to lay it before the jury, and the plaintiffs probably thought it unfavorable to their claim as for a total loss. The insurance was on a quantity

of flax, of which about five sixths was lost by shipwreck, and the remaining sixth much deteriorated. Lord Ellenborough, the chief justice, observed as to the part which was totally lost, " there is nothing either in reason or precedent to prevent us from saying that the plaintiffs may recover; for no case has been cited to show that where the least particle of the thing insured subsists in specie, though the greater part is actually destroyed, the assured shall be precluded from recovering the value of that which is in fact totally lost: finding therefore no authority against the construction we have already intimated, and the reason of the thing being with it, I consider that the plantiffs are entitled to recover as for a total loss, the value of that part which was totally lost; and that they are not entitled to recover for that part which was not totally lost, but still continued to subsist in specie, though deteriorated in value." *Ibid.* 565.

With great respect for the court which delivered this opinion, I will show that there are strong reasons and numerous authorities against it.

In the first place, what can be the use of an exception of partial loss, or an insurance

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

East'n. District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

against total loss only, in any imaginable case, if the plaintiff is entitled to recover the value of every part of the thing assured which may be totally lost? How can a partial loss ever possibly take place, except by the total loss of the part lost, if that expression is admissible? The loss of a part is, *ex vi termini*, the entire loss of it: it cannot be lost and not lost at the same time. Part of a thing may be lost and part saved; but the part lost must be wholly lost. The idea of loss itself is absolute, indivisable. If a pound of sugar is lost out of a hogshead, there is a total loss of that pound, as completely as there would be a total loss of that hogshead, if the hogshead were entirely lost. According to lord Ellenborough's doctrine, all insurances would be alike, and the memorandum a mockery. Every partial loss, however small, might be metamorphosed into a total loss for so much. The memorandum, which is introduced in cases like ours, for the purpose of protecting the insurer against every thing but total loss, will be but an idle form, if he is liable to pay the value of every part of the thing insured that may be lost, by the dexterous catachresis of calling such partial loss a total loss of the part lost. This language is in

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & CO.
*vs.*
LOUISIANA
STATE
INSURANCE CO.

fact worse than a catachresis, it is a downright contradiction in terms: it confounds the distinction between a part and the whole. If the loss of a part can be termed a total loss, in this sense, what words could the insurer use in the policy to protect himself according to his evident intention in all these cases, against any loss but that of the whole of the thing insured? Shall he say, "insured only against a total loss of the whole?" This expression would be an absurd and ridiculous pleonasm, equivalent to "a total loss of a totality." For using the phrase, *total of the whole*, in relation to the addition of numbers, a financial patriot of the British parliament has been dubbed, by the arch critics of England, with a title which the honorable and ingenious economist will enjoy as long as he lives, the title of Sir *Total of the Whole*. The argument I am combating is really more worthy of a jurist of Laputa, or one of Mr. Paulding's wise men of Gotham, than of a learned and venerable English judge.

When an insurance on a cargo, is against a total loss only, the insurer incurs scarcely any other risks than those of the capture or the loss of the vessel; but if the loss of each part of the cargo is to be considered a total loss of

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & CO.
*vs.*
LOUISIANA
STATE
INSURANCECo.

so much, then he incurs all the numerous hazards of the sea, by which any part of that cargo may be destroyed. Let the court consider the premium of insurance in this case; only three per cent.; fair enough perhaps for the risks of capture and shipwreck. on a voyage from St. Jago, in Mexico, to the Havana, but utterly and manifestly inadequate, if all the other risks I allude to were included. If it had been the intention of these parties that the insured should be indemnified for each individual mule that might be lost, would the defendants have consented to insure the mules on deck, which must have been peculiarly exposed, in so small a vessel, to be washed or to fall overboard in bad weather, for the same premium as the mules which were stowed securely in the hold?

The case cited from 15 *East*, is the only one in which this construction has been given to a policy like ours. The opposite doctrine has been maintained by a great number of judicial determinations. Those of the courts of the United States are uniform and decisive. In Biays *vs.* the Chesapeake Insurance Company, (7 *Cranch*, 418,) the court say emphatically, "the proposition appears too

self-evident not to command universal assent, that when only a part of a cargo consisting all of the same kind of articles, is lost in any way whatever, and the residue arrives in safety at its port of destination, the loss cannot be but partial, and that this must for ever be so, as long as a part continues to be less than the whole. This loss then being a particular loss only, and not resulting from a general average, the court is of opinion, that the defendants are not liable for it." In Gracie *vs.* the Maryland Insurance Company, 8 *Cranch*, 84, the court says, " This case differs from that against the Marine insurance Company of Baltimore only in one particular: [see 8 *Cranch*, 75] a part of the cargo remained on board the ship until the arrival of the French troops," (who took possession of them and refused to give them up until a ransom should be paid for them) " when the departure of the vessel was prohibited, and the ransom made. This circumstance does not, in the opinion of the court, vary the case; because, omitting all other considerations, the loss within the risk, being only a part of the cargo, is a partial loss, and is affected by the warranty against particular average loss." In

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & CO.
*vs*
LOUISIANA
STATE
INSURANCECo.

East'n. District.
July, 1826.
~~~~~~
BROOKE,
ALLEN & CO.
vs.
LOUISIANA
STATE
INSURANCE Co.

Guerlain *vs.* the Columbian Insurance Company, 7 *Johnson's Reports*, 529, the court said, " The idea that for each item, or article of the cargo which was totally lost, the defendants are liable, is not well founded." The law on this point is then firmly established in the United States, without the dissentient voice of any one of their tribunals ; and this court has decided, after full argument and great deliberation, that " the contract of insurance is understood here as it is in the other maritime cities of the United States." 12 *Martin*, 499. The insurance in the present case is made upon one entire thing ; a cargo of mules. It cannot be divided : the assured must recover the whole or nothing. But they cannot recover the whole, as the whole was not lost ; and every partial loss is excluded by the terms of the contract.

An argument has been urged by counsel against this doctrine, from its supposed impolicy. If the insured can only recover in the event of an actual total loss, then it is said, that he will have a strong inducement not to save any part of the cargo, but to take care that the whole shall be destroyed. This argument goes much too far to be a good one :

if admitted, it would invalidate almost every
valued policy, and every insurance on freight
or expected profits, as well as every insurance Brooke,
Allen & co.
vs.
Louisiana
State
InsuranceCo.
whatever, excluding partial losses. It might
go far towards annihilating the contract of
insurance altogether : for, in a majority of
cases where vessel and cargo are, as the
phrase is, well insured, the loss of both would
be more advantageous to the assured than
their safe arrival. It is from apprehensions
like those of the learned gentleman, that in-
surances on freight and expected profits of
merchandise, are prohibited by the laws of
France ; and there is no doubt that the pro-
hibition has diminished the business of in-
surance in that country, and caused much more
injury to its commerce, by checking commer-
cial enterprise, than it has done good by the
prevention of some frauds on underwriters.
But even in France, where so much weight
is allowed to this argument, the clause in
policies of *franc d'avarie*, is as well known,
and is interpreted exactly in the same manner
as the clause " free from particular average,"
in the United States. *Emerigon des Assurances,*
c. 12, s. 45, 46 ; *Pothier, Contrat d'Assurance,*
no. 166. Quelquefois on stipule par la police

East'n. District.
July, 1826.

BROOKE,
ALLEN, & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

que les assureurs ne seront pas tenu des avaries, ou qu'ils seront *francs d'avaries.* Le sens de cette clause est, qu'ils ne se chargent que des accidents qui causent une perte entière des effets assurés."

There is another circumstance in our case worthy of attention, if the court could entertain any doubt concerning it. The words by which the insurance was effected, were written in manuscript, not printed in the policy; and it is always held, that in the construction of a policy, the words superadded in writing are entitled to have a greater effect attributed to them than the printed words, inasmuch as the written words are the immediate language and terms selected by the parties themselves, for the expression of their meaning, and the printed words are a general formula, adapted equally to their case and that of all other contracting parties. *Phillips,* 18; 4 *East,* 135.

If the plaintiffs could even recover any thing, as for a partial loss, they would, by no means be entitled to the large sum which the jury have awarded to them.

In case of a total loss, the valuation fixed in the policy remains, unless deceitfully or erroneously made, or much overrated; but

a partial loss opens the policy, and the value
of the articles lost must be proved. *Phillips,*
304, *et seq.* What evidence have the plaintiffs BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.
adduced of the value of the thirty-five mules
lost? Nothing but the vague statement of
Mr. Frost Thorn, that the average price of
those mules was about fifty-five dollars a pair.
At this rate, the thirty-five mules would have
amounted to no more than $962 50.

With respect to the value or proceeds of
the thirty-nine mules which arrived at the
Havana, the evidence is still more unsatis-
factory. We have not the oath, nor even
the certificate, or any declaration of the
auctioneer by whom these mules were sold.
We have no legal evidence of the correct-
ness of the charges, by which the gross price
obtained for those mules was reduced from
upwards of $2,000 to less than $100. But
this consideration is quite immaterial, for it is
impossible that the plaintiffs can recover for
any of the mules except those which were
*totally* lost at sea, even if the opinion of the
English court of King's Bench, in one solitary
case, could prevail against the host of adjudi-
cations which I have cited in opposition to it,
as well as against the meaning of the plainest

East'n. District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

language, and the manifest intention of the contracting parties.

We trust that this cause will not be remanded for another trial. The record contains abundant proof from the plaintiffs' own witnesses; and it is admitted by the plaintiffs themselves that an actual physical total loss of the insured cargo did not take place; and the *policy* shows that it was against such a loss only that the cargo was insured.

*Morse*, for the plaintiffs. On the 17th of February, 1824, the defendants subscribed the policy on which this suit is instituted. The vessel proceeded to Brassos, St. Jago, where she took on board seventy-four mules, particularly selected for the Havana market. The vessel was chartered, manned and provisioned for the voyage, at New-Orleans, at a heavy expense. On her voyage from Brassos to Havana, she encountered gales of wind and storms, and other perils insured against, which caused the death of *thirty-five of the mules*, which were thrown overboard. The remaining thirty-nine were so much bruised, maimed, and crippled; that two of them died on the beach, and the balance were materially

deteriorated in value, insomuch that they produced but the sum of $2000 or thereabouts, and which, after deducting expenses, left, as nett proceeds, about $100. An abandonment is admitted to have been made in due time, and refused by the defendants. Proof of *the execution of the policy. interest in the cargo, payment of the premium,* compliance with the warranties, and the loss, are established by the evidence on file.

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

Suit was instituted, in which the plaintiffs claim,

1. The amount of the policy, $11,000, as a total loss on a valued policy.

2. Such other sum as may appear to be due on the policy.

The defendants plead,

1. That they are not indebted to the plaintiffs in the sum claimed.

2. That the property is overvalued in the policy.

On these issues, the parties proceeded to trial in the district court, before a jury, who found a verdict for the plaintiffs, for $4,500. A new trial was not applied for in the district court, but both parties appealed.

VOL. IV. (N .S.)　　　90

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

In this court the defendants contend,

1. The property is grossly overvalued.

2. There was misrepresentation, suppression, concealment of the truth, and dissimulation, by which the defendants were led into error.

In regard to the overvaluation of the property, the law is well settled on the subject of valued policies. On this point I rely upon the authorities cited by the defendants. *Park,* 102; *Phillips,* 305 and 306; 3 *Binney,* 205, and the cases there cited.

The defendants themselves have fixed the value and received the premium, and it is presumed that they were competent judges. It does not appear that the value was predicated on any *representation of the plaintiffs.* If, however, the subject of value could now be inquired into, there are sufficient facts in evidence to show that there has been no excessive valuation.

1. The charter of the schooner Hazard, at $350 per month, for upwards of three months.

2. The provisions, hay, corn, oats, and water casks.

3. The fixtures, floor, chains, awning, &c.

4. The first cost of the mules at Brassos.

5. The premium paid by plaintiffs, $442.

6. The profits of the voyage, interest, &c.

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCECo.

The value may be estimated by another calculation: suppose the seventy-four mules had arrived safe at their port of destination; it is in evidence that they were the best cargo of mules ever shipped, to the knowledge of the witnesses. It appears, from Thorn's testimony, that one of them, in its crippled state, sold at public auction, on their arrival at the Havana, for $140; and that, had they arrived in good order, they would have sold for $150 each.

Seventy-four mules, at $150 each, is, 11,100
Amount of premium  -  -  -  -  -  442
                Total  -  -  -  -  -  - $11,542

II. The defendants, in their argument before this court, allege concealment, suppression, &c. &c. on the part of the insured. Had they intended to rely on such a defence, it ought to have been *pleaded*, and not reserved for argument on the appeal: I am not bound to answer it. It is an after-thought, and for want of a better argument, introduced to taint the transaction with suspicion, or to endeavor

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCECo.

vor to cast dishonor on the characters of the plaintiffs. But unfortunately for the defendants, there is not the slightest proof to support such an allegation, nor does it exist any where but in the gentleman's *argument.* It is no where proved that any other cargo than mules was to be put on board or insured: mules alone are designated in the policy as comprising the cargo on or under deck. The value is fixed by the defendants, in the handwriting of their secretary, and not, as their counsel was pleased to say, " modestly" by the plaintiffs, at $11,000, and yet the counsel complains of a concealment of facts or allegation of falsehoods.

There being neither concealment, falsehood, nor fraud in the conduct of the plaintiffs, it is idle for the defendants to talk of " being misled" or " deceived ;" if they have been, it is their own fault, and attributable to their own ignorance or negligence.

The books of their inspector would have informed them of the age, construction, and capacity of the vessel; by reference to their charts, they could have seen the course and distance, and the dangers of the voyage to be performed, and yet with all these before their

eyes, they deliberately underwrite $11,000 on the cargo of mules on and under deck, stipulating the premium ultimately at four per cent.; and that too for a voyage to be performed in April or May, the most favorable months in the whole year. If they really apprehended any danger from putting on board a greater number of mules than the capacity of the vessel or the nature of the voyage would justify, it was competent for them to limit the number, to augment the premium in proportion to the risk, or decline the risk altogether. They took the risk at four per cent., a premium higher than on a voyage to any part of Europe, and equal to the usual premium on insurance beyond the cape of Good Hope; and this too for a voyage in a pleasant and safe season of the year, and which the witnesses say is frequently performed in five or six days.

It is also in evidence that the vessel was well constructed for the transportation of mules; and that the number shipped was not more than she could carry with safety.

Passing over the many arguments of the defendants' counsel, founded on inferences from supposed cases, from inconvenience or

East'n. District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

East'n. District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

fancied hardships, let us come to the only point in this case that merits the attention of the court, viz. what is the legal and proper construction of the words used in the policy, *"Insurance on mules, on and under deck, against stranding or total loss."* The inquiry will be confined to the legal import of the words " total loss," as the vessel was not stranded.

The distinction taken by the adverse counsel is correct : a total loss is either technical or constructive ; as, where a certain part of the property is destroyed or injured, or where the object of the voyage is frustrated. When this happens, and an abandonment is duly made of the part that remains, it amounts, in law, to a total loss, and authorises the insured to recover. A total absolute loss is where there is an entire extinction or destruction of the object. A *technical total loss* is insured against in all policies, and may be recovered in all cases, unless expressly excepted or qualified by the memorandum.

The evidence on record, in this case, proves clearly a technical or constructive total loss, and the right of the assured to abandon :

East'n. District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCECO.

1. By the death of thirty-five of the mules by the perils insured against on the voyage;

2. The death of two on the beach at the moment of landing;

3. The injury and deterioration of the balance of the cargo from the same perils, to such an extent as to render them valueless or nearly so.

These facts established, the insured have a right to abandon and declare for a total loss. 2 *Marshall*, 562. " The insured may abandon in any case, where by the happening of any of the misfortunes or perils insured against, the voyage is lost or not worth pursuing, and the projected adventure is frustrated, or where the thing is so spoiled and damaged, as to be of little or no value to the owner, &c." *Vide* 1 *Johnson*, 141, 335, 405; *Phillips on Ins.* 302.

The defendants contend, that under the policy in this case the insurance against " total loss" forms part of the *memorandum* or *exception* to the body of the policy, and there- `re, they are not liable for any other loss `han the absolute and entire destruction or extinction of the property insured, and that as long as a hair of a mule is preserved and `reaches the port of destination, that under

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

the exception in the policy, it is a *partial loss only*, and for which they are not liable, and that the jury in this case, against the reason and spirit of the law and against the positive charge of the court, have found a verdict for the plaintiffs for the $4500. An examination of the policy, to which I pray the particular attention of the court, together with all the authorities cited by the defendants, will show the misapplication of those authorities to the facts in this case, and the fallacy of the argument based thereon.

For the investigation of this branch of the argument, it will be necessary to advert to the origin and the cause of introducing the memorandum into policies.

In *Park on Insurance*, 24, we are told, "The memorandum was introduced in the year 1749, in order to prevent the underwriters from being harassed by trifling demands, which must have arisen upon every assurance of this kind *on account of the perishable nature of the cargo.*" See also 1 *Marshall*, 221–2.

In conformity to this principle, we find in every policy certain enumerated articles more or less perishable in their own nature, some of which are expressly excepted from special

average altogether, and others under a certain
per centage.   These articles, as well as their
liability to special average, differ in different
policies, but are in all, as far as they are de-
signated, considered as exceptions from the
operation of the general policy.

By reference to the policy in this case, the
court will find a long list of memorandum ar-
ticles, among which mules are not to be found,
nor can they be found among the memoran-
dum articles of any policy executed since the
year 1749 to the present day.  It cannot, then,
be pretended, that they are to be considered
as memorandum articles, as they are neither
perishable in their own nature nor included
in the list.   It is a well settled principle of
law, that what is not expressly mentioned in
the *exception*, is not included in it.

The case of Baker *vs.* Ludlow, 2 *Johnson*,
209, is conclusive on this point.  "Where
*dried fish* were enumerated among the articles
in the memorandum to a policy of insurance
as free from average, unless general," it was
held that "*pickled fish* were not included in
the memorandum, and that the plaintiff might
recover for an average loss on them."   Ap-
plying this principle to the present case, we

East'n. District. find that mules are not embraced in the me-
July, 1826.
morandum, and are not perishable in their

BROOKE,
ALLEN & Co.      nature, and that after the enumeration of the
vs.
LOUISIANA        articles, the memorandum concludes in these
STATE
INSURANCE Co.    words: "all other goods free from average
under five per cent., unless general."

If we have shown that the loss on the mules
exceeded five per cent., is it not clear that
we have our action against the defendants,
under the express clause in the memorandum,
for the amount of the special loss proved by
us to have been sustained by the perils in-
sured against? That we have made out this
proof to a sum exceeding the amount of the
verdict, will be seen by an examination of the
evidence, basing the calculation either on the
fair value of the property at the port of desti-
nation, or the first cost charges of transporta-
tion and probable profits. The law and the
facts in this case were before a jury of intelli-
gent merchants, familiar with the subject, and
whose calculations are as correct, at least, as
any that could be made by counsel.

The verdict for a partial loss is good in law,
although the plaintiffs have declared for a
total. 2 *Marshall*, 729. " Upon insurance of
one fourth of a ship, plaintiff declares for a

*total loss* but proves only a *partial loss,* he is entitled to recover such partial loss." The plaintiffs have claimed a total loss, but in the concluding prayer of their petition, they pray judgment for such other sum as by law or equity may be due to them. The plaintiffs and defendants are dissatisfied with this verdict.

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

The defendants urge, that the risk of *total loss* on the mules, is still within the memorandum, and forms an exception to the policy, although the objects insured are not among the *memorandum art cles.* I confess this reasoning is a little too refined for my comprehension: it is, in fact, saying that it is an exception contained in the memorandum, though not among the exceptions designated in the memorandum. The law on this subject is settled by lord Kenyon, in the case of Bowring *vs.* Elmslie. "The rule is, to let the exception control the instrument, as far as the words of it extend, and no farther; and therefore, the case being taken out of the letter of the exception, the body of the instrument remains in full force." If the words *total loss* are to be taken as an exception, we cannot go beyond the letter to ac-

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

commodate the defendants, nor declare it to be any other than the usual legal total loss, in the sense as used in all commercial cases. It will not be difficult to satisfy the court, that the guarantee against " total loss," is neither a memorandum nor exception to the policy. In looking at the face of the policy, if every thing printed or written below the word " memorandum," is to be considered as memorandum or exception to the instrument, then there is *no policy*, and of course nothing to which the exception can stand opposed, and the defendants' argument would prove too much : for, in no part of the policy, except under the memorandum, is there any declaration of the description, quantity, value or amount of the cargo to be insured.   The words are : " This insurance to be on cargo valued at eleven thousand dollars, say $11,000, mules on or under deck against stranding or total loss.

(Signed)          RICHARD RELF, Pres't."

If these expressions be memoranda, the court will perceive, by taking them from the policy, there would be no contract left. This, surely, will not be contended for : they might as well urge that the signature of Richard Relf, Pres't., is part of the exceptions, as the

preceding clauses. The fact is, the excep-
tions or memoranda stop where it was in-
tended and understood by the parties they BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.
should stop, after the enumeration of the arti-
cles which were exonerated from payment of
special average, within the terms therein
stipulated. The rest is *contract*, and the body
of the instrument and the " *total loss*" there
stipulated, is the technical constructive total
loss, which makes the underwriters liable
under the principles of law for the amount
of the policy, on the proof of the facts of the
injury from the perils insured against, and
abandonment.

The defendants' counsel relies on several
authorities, to which I request the attention
of the court:

7 *Cranch*, 415, Biays *vs.* the Chesapeake
Insurance Company. This was an insurance
on *hides*, a memorandum article, and five
sixths of the hides arrived safe in port.

8 *Cranch*, 39, Marcardier *vs.* the Chesapeake
Insurance Company. This case decides that
*memorandum articles* are not liable to partial
average.

3 *Bos. & Pul.* 474. This was a case of *fruit*,
a memorandum article.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

1 *Caine's Reports,* 196. This was a case of *corn,* a memorandum article.

2 *Maule & Selwyn,* 371. This was a case of *rice,* a memorandum article.

1 *Wheaton,* 219. This was a case of *Indian corn, navy bread* and *corn meal,* all memorandum articles.

7 *Johnson's Reports,* 527. This was a case of special insurance. The policy contained the following written clause: " The assurers, by this clause, take *no other risk* than *general average,* and *such total loss only,* as may arrive by the *absolute destruction of the property.*"

With the exception of the case last cited, the court will perceive that the objects insured were exclusively memorandum articles, and as such, by the express terms of the exception, "*free from special average*" under all circumstances, and the assurers, consequently, not liable, except for a *total absolute loss ;* and these decisions are founded in reason and the necessity of the case, which gave rise to the introduction of the memorandum articles into a policy, from the impossibility of determining, whether the deterioration proceeded from natural decay or from the peril insured against.

Admitting for a moment, that mules were

memorandum articles, or that the total loss
must be such as that contended for by the
defendants' counsel, the question presents
itself, whether on this case there is not proved
such a total absolute loss of a *part of the cargo,*
as to make the underwriters liable at least for
that amount.

It is proved that thirty-five mules died at
sea, and were thrown overboard: it is not
pretended that a hide or hair of them ever
reached the port of destination. Is not this a
sufficient destruction of the property to satisfy
the scruples of the gentlemen? and is it not
sufficient to sustain the verdict of the jury for
$4500? The seventy-four mules in the Ha-
vana, would have been worth $11,100, thirty-
five mules at the same rate, were therefore
worth $5250. But the defendants tells us
that we are not permitted to divide the risk,
that the loss is not total as long as a hide or
a hair of a mule remains to reach the port.

On this point there are authorities on both
sides and apparently in contradiction to each
other. I think they may be reconciled, if not
I shall be able to show that the weight of au-
thority as well as the reason and justice of the
case are clearly on our side.

East'n. District.
*July*, 1826.

BROOKE,
ALLEN, & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

The first authority on the part of the defendants, is the case of *Biays* vs. *the Chesapeake Insurance Company*, 7 *Cranch*, 415. "There cannot be a total loss of part of a cargo consisting of *memorandum articles* of only one species, (such as hides.") These hides were declared to be *free from average* unless general. Judge Livingston declares his opinion in this case to be founded on the memorandum clause, out of many thousand hides a few hundred only were lost, and had it not been for the memorandum in the way, says the judge, the plaintiff must have had judgment for a partial loss. This shows most clearly that the decision of the court rested upon the express terms of the memorandum alone, and had not that stood in the way, the plaintiff could have recovered the amount of whatever loss he could have proved.

The case cited by the defendants' counsel, Gracie *vs.* the Marine Insurance Company, 8 *Cranch*, 75, has no relation to this case.

Gracie *vs.* the Maryland Insurance Company, 8 *Cranch*, 84. This is declared by the judge to be for a partial loss and affected by the warranty against *particular average loss*.

Guerlain *vs.* the Columbian Insurance

Company. This was the case before referred to of a special assurance " on such total loss as may arise by the absolute destruction of the property," and all memorandum articles. The court decided, " *there was no absolute destruction of property*, or general average, and in no other event can the defendant be responsible."

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

Against these authorities the plaintiffs refer the court to *Phillips on Insurance*, 488.

" Insurance being made on 54 hogsheads of sugar from Gottenburg to Stralsund, *free of average*, the cargo was so much damaged by sea water that the small quantities remaining in each hogshead, did not amount to more than one hogshead. Gibbs, chief justice, I am inclined to think it an average loss : *if any of the hogsheads had been entirely lost, it would have been a total loss as to them.* Speaking of the case of a total destruction of a part of a cargo of flax, chief justice Gibbs said the subject there was capable of division, but here every hogshead contained some portion of sugar, and I cannot distinguish between a small and a large part being saved."

In the case of Davy *vs.* Milford, decided by lord Ellenborough, in the court of Kings Bench, in 1812, and reported in 15 *East*, 559.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCECo.

The question whether the loss could be divided was argued at length before the court: His lordship decided, " under the terms of this policy, which warrants the underwriters free from particular average, the plaintiffs cannot recover unless there was an *actual total loss.* But how can it be said there was a total loss of the whole, when one sixth of the flax insured still exists in specie, though deteriorated in the hands of the assured. As to that part, therefore, he cannot recover; but as to the rest, which was in fact totally lost, there is nothing, either in reason or precedent, to prevent us from saying, that the plaintiffs may recover; for no case has been cited to show that where the least particle of the thing insured subsist in specie, though the greater part is actually destroyed, the assured shall be precluded from recovering the value of that which is in part totally lost. Finding therefore no authority against the construction, we have already intimated, and the reason of the thing being with it, I consider the plaintiffs are entitled to recover as for a total loss, the value of that part which was in fact totally lost, and that they are not entitled to recover for that part which was not totally lost."

From these and many other cases it ap-
pears that under a warranty *free from average*,
if the property arrive at its port of destination, BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.
no matter how much deteriorated or injured,
if it remain *in specie*, the underwriters are not
liable as for total loss; yet where the subject
insured, will admit of division, and part of the
property is lost totally, as in the case of the
sugars and the flax, they are liable for that
part so lost, yet I believe no adjudicated case
can be found in any commercial country where
property not perishable in its nature, not in-
cluded in the memorandum, nor under a spe-
cial guarantee against total loss only, or ab-
solute destruction or *free from average*, where
the assured is not permitted to recover at
least the part of the property lost or destroyed.
This, as lord Ellenborough observes, is but
reason and justice.

The only case relied on, on the part of the
defendants remaining to be noticed, is that of
Murray *vs.* Hatch, in 6 *Mass.* 465. This was
insurance upon a ship, cargo and freight,
against a total loss *only*. On examination of
this case, it appears there was no loss of ship,
cargo or freight, it is true the ship grounded,
but she got off, and it is expressly stated the

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

cargo was saved; there being no loss of any kind, the court correctly decided that the assured could not recover upon the policy. This is the case triumphantly referred to by the defendants' counsel as containing unanswerable arguments; but as the cases are not similar the ingenuity of counsel and the *unanswerable* arguments of judge Sewall, will have but little influence.

We will now return to the important point in this cause; the legal meaning to be affixed to the words "total loss" as mentioned on the policy. The learned counsel for the defendants have modestly asked, if the words "total loss," as used in the policy do not mean a natural absolute total loss: what expressions can the underwriters use to protect themselves? they have rather playfully asked if any other meaning be affixed to it, is it not a dexterous catachresis? a flat contradiction in terms. He asks what words shall be used; shall he say, "Insured only against a total loss of the whole," or "a total loss of the totality?"

It is not a necessary part of my duty to advise the learned counsel or his clients what expressions are proper to be used, when they wish to convey their notions of a "total loss;"

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCECo.

but I would beg leave to remind them that when they again receive a premium of four per cent. for guarantying a " total loss," and wish those expressions to mean any other than the common, usual, general, known and received signification, or when they mean to make it an exception to the general rule, that they would say so. It would surely be more candid to adopt the language of the underwriters in the case of *Guerlain* vs. *The Columbian Insurance Company*, in 7 *Johnson*, 527 : " The assurers, by the policy, take no other risk than general average, and such *total loss only* as may arise by *the absolute destruction of the property.*" They might stipulate for total loss *only*, free from average, or some other equivalent expressions, which I presume this court will inform them they are bound to use, if they wish by any exception, to take the words *total loss* out of its ordinary and received meaning.

If there be any fraud or dissimulation in this transaction, the court may find it here, in the ingenious contrivance of the underwriters, in the warranty of total loss; receiving from the plaintiffs an exhorbitant premium, and then gravely contending that they guarantied no other risk than *total absolute loss ;* which, in

East'n. District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCECo.

that sense of the word, as they understand it, is in effect no risk at all; as it would be next to impossible that some remnant of the seventy-four mules should not reach Havana.

The counsel for the defendants admits, in argument, that the only other risk is capture; and in time of profound peace there is not much to be apprehended from that quarter, and yet their counsel modestly ask, would the underwriters have subscribed the policy had they believed they were running any other risk? This is *modesty personified.* Four hundred and forty-two dollars and running no risk, is pleasant enough for those who receive it, but it is death to the insured. This would be oppression in the extreme: it could never have been the object of our legislature, in extending such immense privileges to insurance companies, for gambling purposes, without some corresponding liability.

There is one point in this cause which remains to be noticed, and notwithstanding the light and unceremonious manner in which it has been passed over by the defendant's counsel, I think it will receive proper attention from this court: it has a direct bearing upon the construction given to the terms *total*

*loss.* If they are to receive the construction contended for by the defendants' counsel, that nothing but total annihilation of the property will make the insurers liable, I would ask whether that principle will not rather encourage mariners or owners to *effect* a total loss in that sense of the term, than induce them to labor for the preservation of the property. If the whole property be thrown into the sea, it is a total loss, and the insurers are liable, if any part is saved and carried into port, it relieves the insurer and is a certain loss to the owner, even if the property was entirely spoiled and without value.

And in the present case, how easy would it have been to have fulfilled the notions of the underwriters, as to a total loss, by throwing overboard the balance of the crippled cargo; and judging from the protest, as to the situation of the vessel, in a gale of wind, on her beam ends; and mules crippled, broke from their fastenings, and down in a heap to leeward, few mariners would have hesitated to have completed the work, and they would have been perfectly justified in so doing. If the property has been preserved and carried into port by the exertions of the crew, it has

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCECo.

East'n District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCECo.
been for the benefit of the underwriters, who ought to be cautious in advancing a doctrine that must inevitably terminate in their ruin.

I conclude by observing, that as the defendants have not succeeded in making out their " total loss" to be an exception to the general rule ; that as the article insured is not a memorandum article, it must be considered by the court that they are bound, as for a total loss, in the usual, legal, and technical sense of the word, and liable, in law, to pay the amount of the property insured, as valued by themselves in the policy, for which we pray judgment.

*Workman*, in reply. The most usual plea to an action on a policy of insurance, is the general issue. It enables the defendant to give in evidence any matter, or urge any argument, that goes to disaffirm the contract. "If, therefore, the defendant would dispute the legality or validity of the policy ; if he would deny the interest of the insured, and show the policy to have been a wagering one ; if he would prove that the insured has been guilty of misrepresentation, concealment or any other fraud ; that no loss, or at least not

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCECO.

to the amount claimed by the plaintiff, had happened, the general issue is the proper plea." *Marshall, b.* 1, *c.* 17, *sec.* 3 ; *Park.* 404. Our general plea, then, is unexceptionable. The additional special averment was not necessary: it was offered in the spirit of the utmost good faith for the plaintiffs' information and advantage.

The error of the jury who tried this cause, having arisen from a mistake respecting the law, an appeal to this court is a more speedy and effectual mode of correcting the judgment, than could have been found in a new trial. Suppose a new trial had been granted: either party might still appeal, whatever verdict might have been given, and the main question of law would still have remained for the decision of the tribunal of the last resort.

Mules, says the counsel, are not memorandum articles. This is a mistake: every thing is a memorandum article which is inserted in the memorandum. The gentleman confounds the memorandum with what is called the common memorandum; though even the common memorandum is very variously composed in different countries, in the different states of this Union, and in different insurance

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

offices in the same country. In the common policies adopted in London, corn, fish, salt, fruit, flour and seeds, are warranted free from average unless general, or the ship be stranded : sugar, tobacco, hemp, flax, hides and skins, are warranted free from average under five per cent. *Marshall, b.* 1, *c.* 6, *s.* 3. In the policies used in this city, in the very policy on which the present suit is brought, the common or printed memorandum specifies many other articles of a totally different nature from those enumerated in the London policies, as warranted by the assured free from partial loss ; such as bar and sheet iron, iron wire, tin plates, hempen yarn, cotton bagging, pleasure carriages, household furniture, musical instruments, looking-glasses, and generally all other articles, which are perishable in their own nature. It is quite evident, that most of these articles are less perishable in their own nature, and far less exposed to be destroyed by the perils of the sea, than mules. This record furnishes abundant proof, that mules are particularly liable to such destruction. The remarks of the learned and ingenious counsel, on the facility and propriety of throwing them all overboard in certain cases,

will not, I trust, be lost on the court, or on the underwriters, when they may be hereafter called upon to insure such cargoes. But, whether mules are perishable in their own nature or not, whether they are or are not peculiarly liable to partial loss, they are emphatically memorandum articles in this policy: they are specified in the memorandum itself, and that not in the common printed part of it, but in manuscript.

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

The numerous authorities we have adduced in support of our argument and our cause, have not, we conceive, been shaken by the two English cases referred to by the plaintiffs' counsel, if these cases could even be considered, contrary to the uniform decisions of this court, to have any authority in this state.

*Workman*, on an application for a re-hearing. The defendants and appellants respectfully pray for a re-hearing of this cause.

We submit, in the first place, that the weight of authority is decidedly in our favor. The only case really against us is, that of Davy *vs.* Milford. The principle on which it was determined, is not by any means supported by the case of Hedberg *vs.* Pearson. The

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

insurance, in the last case, was declared to be on fifty four hogsheads of sugar, warranted free from particular average. The ship was stranded and bilged, but every one of the fifty-four hogsheads of sugar which the assured had on board, was saved, and in every hogshead there were some loaves of sugar, although by far the greater part had been washed out. A hogshead usually contains about 120 loaves, and out of the whole cargo seventy-eight loaves were saved dry, and forty-five loaves wetted by the sea. The plaintiff contended, on the authority of Davy *vs.* Milford, that he was entitled to recover, but the jury were clearly of opinion that this was an average or partial loss, such as was intended by the warranty, and found a verdict generally for the defendant. On a motion for a new trial, the court held, " that inasmuch as it could not be said that none of the sugar was saved, they could not draw any measure of a proportion to be saved, which should be compatible with a total loss: if they should begin so to do, they could not see where they were to stop: even if this were a fit case for the consideration of the court, they thought the jury had rightly decided it. In Davy *vs.* Milford

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

there was a clear line to be taken, for some of the bundles of flax never came on shore," and the new trial was refused. 7 *Taunton*, 154.

The principle on which the decision in Davy *vs.* Milford is founded, is that the subject was there capable of division; the flax being packed in distinct bundles, some of which were lost or destroyed; but were not the loaves of sugar, in these fifty-four hogsheads, as distinct from each other, as susceptible of division, as bundles of flax or mules? Every ascertainable portion of a cargo, however packed or stowed, is a distinct part of that cargo. A ton or a hundred weight of sugar, of rice, corn, salt, or the like, forms a distinct part or portion of the cargo to which it belongs, whether it be put up in bags or barrels, or stowed in bulk. The portion of a cargo of this kind, stowed in bulk, which may be brought safe to port, can be as well ascertained, by means of weighing or admeasurement, for the purpose of estimating the value of that part of it which may have been lost, as if the cargo were put up in separate packages. Now, if the principle laid down in Davy *vs.* Milford is correct, the loss of such a part, however small, must be a total loss of that part, for which the

East'n. District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCECo.

insurers would be liable, notwithstanding the exclusion of all partial loss, or the still clearer and stronger stipulation of the words "Insured only against a total loss." If the insurers object, and say, "There is but a part of the cargo lost, and we are warranted against all partial loss," they are answered, "You are quite mistaken; this is not truly and properly a partial loss, it is a total loss of the part lost; for each ascertainable part of the thing insured, forms by itself a distinct and separate totality of the whole, and the loss of it is a total loss *pro tanto*; for which, in spite of your ingenious memorandum, you must be responsible." Such must be, in substance, the logic and the language of our adversaries, if they will follow up consistently the doctrine of lord Ellenborough, in Davy *vs.* Milford. The distinction between separate bundles, bales, boxes, or individual articles, and any other ascertainable parts or portions of an insured cargo, has not, in the correct application of that doctrine, any foundation in justice, reason, or expediency, nor in the obvious meaning of the words used in the policies of insurance. Wherefore the whole memorandum will be a nullity, and every possible exception,

however expressed, of partial loss, utterly
void.  Let us suppose a cargo of 100 tons of
ice, put up in a hundred distinct parcels by
means of coarse cloths or blankets, to be in-
sured from Boston to New-Orleans, against
total loss only, or free from particular average.
The cargo may be valued, in order to cover
the profits which the assured hopes to make,
at ten or twelve cents a pound, or $20,000 for
the whole; ice has been sometimes dearer in
this city.  If the insured is lucky enough to
lose fifty of these parcels, by the process of
thawing, and pump out their contents, he will
be entitled, on the principle laid down in
Davy *vs.* Milford, to recover as for a total
loss of one half of his valued cargo, and thus
make an excellent voyage, and profit very
handsomely by his loss, independently of what
he may receive for the portion of the cargo
brought safely to port.  But if this ice should
be stowed in hogsheads, in packages of twenty
to each hogshead, then if but a pound of ice
should come to port in each hogshead, the
insurer, on the principle of Hedberg *vs.* Pear-
son, could recover nothing.  His fate would
be no better if the cargo were stowed in bulk,
and a single ton of it should arrive safely.

East'n. District. In the one case, the loss of only half the cargo
*July*, 1826. would be adjudged to be not a partial but a
BROOKE, total loss of so much; and in the other cases,
ALLEN & Co. the loss of ninety-nine hundredths of the
*vs.* whole cargo would not be a total loss of any
LOUISIANA
STATE thing, but a mere partial loss, for which the
INSURANCE Co. insurer would not be liable. On what is this
extraordinary distinction founded? Not on
precedent, as lord Ellenborough himself ad-
mits, when he first established it in the case
of Davy *vs.* Milford. If it was on reason, as
his lordship intimates, he does not con-
descend to tell us what that reason was, so
that his decision rests on the mere authority
of the court of which he was a member; an
authority which, in these states, has now no
binding force. This is certainly clear; if the
principle of Davy *vs.* Milford be right, the
principle of Hedberg *vs.* Pearson is wrong;
and so are all the decisions in the books
against the right of the assured to recover for
partial loss on memorandum articles, in every
case where the amount of the loss could be
distinctly ascertained; and that would be in
ninety-nine cases out of a hundred.

The inconsistency of these two decisions is
manifest in every sentence. Where was the

difficulty in the sugar case, of distinguishing
the part of the sugar saved, from the part
that was lost, the pretended difficulty on BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.
which it was attempted to draw a distinc-
tion between the two cases? The 54 hogs-
heads contained 120 loaves of sugar each,
making in all 6480 loaves; of these, 123
loaves were saved in kind, which, deducted
from the whole number insured, leaves 6357
loaves lost. Here was a clearly ascertained,
absolute loss of upwards of ninety-eight per
cent. of the whole cargo; and yet the court
correctly decided that it amounted not to a
total loss of that cargo, nor to a total loss of
the part lost, but to a partial loss; for which,
from the stipulation in the memorandum, the
underwriter was exonerated: although, in
Davy *vs.* Milford, the same court had decided
that a loss of only five sixths of a cargo of
flax, insured in the same manner, was a total
loss of the part so lost. The only point really
decided in Hedberg *vs.* Pearson, is directly
adverse to the decision in Davy *vs.* Milford.
The remark of chief justice Gibbs, at the con-
clusion of his opinion, may have been made
inadvertently, or from respect to the authority
or memory of his predecessor. There is then

East'n. District.
July, 1826.

BROOKE,
ALLEN & Co.
vs.
LOUISIANA
STATE
INSURANCE Co.

but one case in the English books by which the verdict for the plaintiffs can be supported: and I beg leave to repeat that all the American decisions, without exception, as the plaintiffs' counsel himself has shown or admitted, are on the opposite side; and that this court has held that the contract of insurance is understood here as in the other maritime cities of the United States. On these authorities our contracts have been entered into; by these they ought to be interpreted and decided.

But the words total loss are sometimes considered to embrace the loss of only a half or upwards of the thing insured: why then should they not be extended to any and every partial loss of a distinct part, even of memorandum articles? Because the memorandum was introduced, and has been constantly used for the express purpose of avoiding and excluding that extraordinary and sometimes pernicious interpretation. In the first case, this construction, extraordinary as it seems, is supported by numerous judical decisions, and long established usage; in the second case, a different construction, that for which we contend, is supported by authorities of the same kind, equally valid and powerful.

East'n. District.
*July*, 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

With respect to the premium paid in the present case, there is no evidence, and nothing but the assertion of counsel, to show that it was exorbitant, in proportion to the risks insured against.   These risks were,

1. The loss or stranding of the schooner: a risk known to be great for all vessels trading to the bar-harbors of the neighboring part of the Mexican coast, where they are much exposed to squalls and gales from the north.

2. Loss by capture: a considerable risk for vessels of every nation, trading between Mexican and Spanish ports.   They are liable to be seized, and are often seized, by the armed cruizers of both belligerents, on suspicion of having enemies, or enemy's property on board.   They are also liable to be seized, on the same pretexts, in the very ports to which they go.

3. The total loss of the cargo of mules: a risk which was in this instance within an ace of happening; a risk of which the nature and extent may be pretty well ascertained from the evidence in this cause.   If the chains, by which the mules on deck were held, had been as bad, or as badly fastened as those of the mules in the hold, the whole cargo must have

East'n. District.
*July,* 1826.

BROOKE,
ALLEN & Co.
*vs.*
LOUISIANA
STATE
INSURANCE Co.

been lost. So far was the premium of three per cent. from being high, according to the plaintiffs' present construction of the policy, that I am persuaded no intelligent and prudent underwriter would enter into such a contract for double that consideration. If each mule killed or thrown overboard was to be paid for separately by the insurer, it would be very extraordinary indeed if he did not lose more than the amount of his premium in every such voyage, however well conducted and fortunate.

The intention of the parties, as far as it can be collected from the terms of the policy, and there is no other evidence of their intention on record, was evidently not that each individual mule should be insured against a total loss. The insurance was effected on a cargo, on one entire thing by that name. The valuation was made on that cargo, in the same manner. If the intention of the insured had been, as the court supposes, nothing would have been more easy for them than to have expressed that intention, by words such as these, " Mules on and under deck are insured each against a total loss, or the stranding of the vessel." The plaintiffs have not to countenance this supposition of their intention, even

the presumption which might have arisen, if
the valuation had been at so much per head
for each mule.    The valuation like the in-
surance, is on the entire cargo insured, and
nothing else.    Consider once more the lan-
guage of this policy : *"Mules on and under deck*
[*insured*] *against stranding or a total loss."*    It
seems manifest from these words, that the real
intention of the underwriters was to insure the
cargo only against stranding or the total *loss of*
*the vessel*; otherwise we must admit, agreeably
to the fair grammatical construction of the sen-
tence, that they meant to insure the mules
against the stranding as well as the total loss of
those mules; which would be an absurd expres-
sion.    Stranding can be predicated of vessels
only ; and in this stipulation, total loss is appli-
cable to no other subject than that to which
stranding may be properly applied.    Nothing
then was insured but the safe arrival of the
vessel.

But would the premium, it is asked, have
been paid if the condition had been under-
stood by the insured to be, that if only one of
the mules he put on board, reached the port
of destination, he was to sustain the loss?
Why not, when he considered all the other

risks insured against, by which the vessel or the voyage might be totally lost? In the case of Hedberg vs. Pearson, on which the plaintiffs rely so much, there were only 123 loaves of sugar saved out of a cargo of 6480 loaves; very little more than in the proportion of one mule to the seventy-four mules of which the plaintiffs' cargo consisted; and yet the assured were obliged to sustain the loss of all the rest of the sugar, great and distinctly ascertained as that loss was admitted to be. If total means the whole, and it is acknowledged to have that meaning literally and invariably, when applied to memorandum articles, then it must be quite as incorrect to call the loss of seventy-three seventy-fourths, as it would be to call the loss of one seventy-fourth of an insured cargo, a total loss of that cargo.

Considering the novelty of this question in Louisiana, its general importance to commerce, and that the judgment of this court upon it differs from all the judgments rendered in similar cases by the tribunals of the other maritime states of the union, the defendants respectfully solicit a further investigation of the subject, and that it may not be finally decided till the court is full.